(No. 26907.—
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* NICOLI PERRI, Plaintiff in Error.

*Opinion filed November 17, 1942.*

JAMES M. BURKE, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and THOMAS J. COURTNEY, State's Attorney, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE MURPHY delivered the opinion of the court:

In a trial in the criminal court of Cook county, without a jury, plaintiff in error, Nicoli Perri, was found guilty of the murder of Carmela Rinaldi and committed to the Illinois State Penitentiary for fourteen years. He prosecutes this writ of error and as grounds for reversal urges that the evidence does not establish his guilt beyond a reasonable doubt, that the court erred in refusing competent evidence offered by him and that incompetent evidence was admitted on behalf of the State.

The deceased, Rinaldi, and his partner, John Scorza, operated a grocery, delicatessen and restaurant at 763 South State street, Chicago. The dimensions of the room in which they conducted their business were 16 by 80 feet. It was divided into two rooms by a partition 30 feet from the front. The grocery and delicatessen business was conducted in the front room and the rear room was used to serve sandwiches and light lunches. The front room contained shelving, counters and a meat case.

Plaintiff in error came to the United States from Italy in 1931. In 1933 he entered the employment of the city of

Chicago as a street sweeper and continued in that service until the day of the fatal shooting April 25, 1941. He had known Rinaldi and Scorza for several years prior to the homicide and kept his street-sweeper's uniform and other sweeper's paraphernalia in a shed to the rear of their store. At the time of the shooting, he had a radio and a bag containing a pistol and clothing in the back room of the store. He purchased grocery articles from the partnership and had some of his meals in their restaurant and was a frequent caller at the store.

On April 24, 1941, after eating his lunch, he engaged in a card game with deceased and Pasquale Farradi. A dispute arose in a short time and the game ended. Plaintiff in error charged Rinaldi with taking a nickel more than was coming to him from the game. Plaintiff in error left the store and returned for breakfast early the next morning. Rinaldi was not present at that time. A few minutes after 12 o'clock, noon, April 25, plaintiff in error returned to the store for his lunch. There is evidence which indicates that the argument of the night before was renewed. Rinaldi was shot about 12:30 and the evidence describing the events which preceded the shooting is in conflict. Plaintiff in error admits the homicide but claims it occurred in lawful self-defense.

John Scorza testified that when plaintiff in error entered the store, he was in the back room and that Rinaldi, Tom Stone and Dean Paron were present. He further testified that the plaintiff in error took his radio from the shelf and placed it in a shopping bag, stating he would not leave it there for Rinaldi, that later he heard plaintiff in error and Rinaldi in a heated argument in the front room, saying to each other in Italian "You no good, you no good;" that he then heard five shots and saw plaintiff in error run out the back door. Scorza stated he then went to the front room and found Rinaldi behind a counter near the wall, shot and bleeding profusely; that no one except plaintiff

in error and Rinaldi were in the front room at the time of the shooting, and at the time of the shooting plaintiff in error was on the opposite side of the counter from Rinaldi. He testified he found a butcher knife on the floor behind the counter near Rinaldi and that the knife was one customarily kept on the counter for cutting meat.

Tom Stone testified he was in the rear room eating his lunch when the shooting occurred; that he heard the argument between Rinaldi and plaintiff in error in the front room; that plaintiff in error went to the back room, obtained his gun and began shooting Rinaldi; that he heard about five shots and saw Rinaldi just before the shooting commenced and that the only thing Rinaldi had in either hand was his smoking pipe; that after the shooting plaintiff in error left the building through the back door carrying the pistol. He admitted on cross-examination that he had testified at the coroner's inquest where he stated that when he heard the shots he thought they were explosions of firecrackers. On examination by the court, the witness stated that at first he thought the shots were explosions of firecrackers and that he did not see plaintiff in error fire the first two or three shots, that he did not actually see plaintiff in error get the gun from the rear room but he saw plaintiff in error go behind the partition but did not see the gun until he commenced shooting.

Dean Paron testified he was in the rear room eating his lunch when the shooting occurred and plaintiff in error came in dressed in his white street-cleaner's uniform and talked in Italian with Rinaldi and Scorza; that their conversation was loud and after a time Scorza and plaintiff in error went out the back door and when they returned in a few minutes plaintiff in error picked up a radio and put it in a bag; that plaintiff in error then went to the front where Rinaldi was and a little later three shots were fired and plaintiff in error went out the back door carrying what looked like a gun.

Plaintiff in error testified that when he returned to the store at noon, both Rinaldi and Scorza were in the front room, that the old argument was renewed and that he told them he was going to get out of their way, that he then went to the rear room, placed his clothing and radio in a bag and when he returned to the front room Rinaldi and Scorza were standing together; that when he was about two steps from the front door Rinaldi advanced toward him with a butcher knife; that he dropped the bag and the pistol fell to the floor, that he picked it up and fired three shots at Rinaldi. He testified he then went to his room where he left the pistol and his street-cleaner's uniform; that he spent the night on the south side of Chicago and the next day moved to the west side and was about to give himself up to the police when he was arrested on August 3, which was more than three months after the shooting.

Other evidence consists of the testimony of the policeman who was called to the store immediately after the shooting, the officer who found the pistol in plaintiff in error's room, and plaintiff in error's two witnesses who testified as to his good reputation as a peaceful and law-abiding citizen. The State offered the testimony of three witnesses who testified that his reputation was bad.

Plaintiff in error argues that the conviction rests solely on the uncorroborated testimony of Tom Stone and that his evidence is so unreliable that no credit should be attached to it. It is obvious plaintiff in error misapprehended some of the testimony for it is clear that Scorza's and Paron's evidence corroborates Stone in some important particulars. Plaintiff in error says he was about two steps from the front door when Rinaldi advanced toward him with a butcher knife raised ready to strike. This is in direct conflict with the evidence of Scorza and Stone for they said Rinaldi was behind the counter when he was shot, and that plaintiff in error was on the opposite side. Plaintiff in error's account of the shooting differs in many ways from that of the other witnesses and the testimony

of Scorza and Stone, if true, negatives plaintiff in error's claim of self-defense.

The trial judge saw and heard the witnesses testify. He had the opportunity to observe their conduct and demeanor while testifying and was in a better position to weigh their testimony than is a reviewing court. The law has committed to the jury, or to the trial court where a cause is tried by the court, the determination of the credibility of the witnesses and of the weight to be accorded to their testimony, and where the evidence is merely conflicting this court will not substitute its judgment as to credibility for that of the jury or the trial court. (*People* v. *Bolger,* 359 Ill. 58; *People* v. *Mangano,* 356 id. 178; *People* v. *Fortino,* id. 415; *People* v. *Arbuthnot,* 355 Ill. 577; *People* v. *McPheron,* 354 id. 381;. *People* v. *Herbert,* 340 id. 320; *People* v. *Yates,* 339 id. 421; *People* v. *Martin,* 304 id. 494.) There is evidence to support the conviction and the credit to be attached to such evidence was for the trial judge.

Plaintiff in error produced witness Dan Gully, who testified he had known the witness Tom Stone for about three years and that on the Monday following April 25, 1941, he had a conversation with Stone relative to the shooting. Objections to questions concerning this conversation were sustained. Apparently the object of the question was to impeach the witness Stone and to show that he had made statements out of court inconsistent with his testimony at the trial. The defense counsel did not make an offer of proof or show just what he expected to prove by the conversation. No inquiry was made in the cross-examination of Stone as to whether he had made prior contradictory statements out of court, nor was any foundation laid for the introduction of impeaching testimony. The evidence was clearly inadmissible.

Before a witness can be impeached by showing he has made oral statements out of court inconsistent with his testimony, he must be asked as to the time, place and per-

sons involved in the alleged conversation in order that he may be afforded an opportunity to explain it. If the witness denies having made contradictory statements at the time, place and to the person alleged, then the contradictory evidence becomes proper. *Aneals* v. *People,* 134 Ill. 401; *People* v. *Lenhardt,* 340 id. 538; 1 Lewis' Greenleaf on Evidence, sec. 462.

In cross-examining the witness Scorza in reference to the butcher knife that was customarily used in the store, Scorza testified that Rinaldi was supposed to cut some bacon for a customer who was coming to the store for it about 2:00 P. M. On re-direct examination, Scorza stated that the customer's name was Morey, and that he came to the store every day except Friday. Objection was made to that part of the answer which referred to Morey's visits to the store every day except Friday, as being immaterial. In view of the way the subject was developed on cross-examination, there was no reversible error in permitting him to testify on re-direct examination to the matter stated.

Plaintiff in error also contends that the court erroneously permitted officer Dennis to testify, over objection, that he searched for plaintiff in error after the shooting at the home of his brother but that plaintiff in error could not be found. This evidence was offered by the State in direct to prove flight and was proper for that purpose. Later plaintiff in error admitted that after the shooting he ran from the scene of the crime; that he moved from his room, first to the south side and then to the west, and that he was not arrested until more than three months after the shooting. This contention is without merit.

The record is free from reversible error and the judgment of the criminal court is affirmed.

*Judgment affirmed.*