(No. 34196.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CATHERINE HEIDMAN, Plaintiff in Error.

*Opinion filed May 23, 1957—Rehearing denied September 16, 1957.*

502

Julius L. Sherwin, and Theodore R. Sherwin, both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and BENJAMIN S. ADAMOWSKI, State's Attorney, of Chicago, (FRED G. LEACH, JOHN T. GALLAGHER, RUDOLPH L. JANEGA, and WILLIAM L. CARLIN, of counsel,) for the People.

Mr. CHIEF JUSTICE KLINGBIEL delivered the opinion of the court:

The defendant, Catherine Heidman, was indicted jointly with one John E. Smuk in the criminal court of Cook County for the crime of abortion. The State elected to proceed solely against the defendant, Catherine Heidman, who was tried by jury, found guilty, and sentenced to imprisonment for a term of not less than one year nor more than three. She prosecutes this writ of error, contending that she was tried as an accessory and the evidence is insufficient to prove her guilt as such, that incompetent evidence was admitted, that the argument of the prosecutor was inflammatory and prejudicial, and that error was committed in giving and refusing certain instructions.

The only witness who testified for the People concerning the alleged operation and defendant's connection therewith was the prosecuting witness, Mary Karageorge. She testified that she had sexual intercourse with a man in the month of November, 1953, and in December and January she had no menstrual period. On January 27 she and another person went to see Dr. Smuk at his office at 1726 West Chicago Avenue, Chicago. He examined her, and in response to her inquiry told her she was pregnant. She told him she had five children and could not afford another one. He thereupon wrote the name "Heidman" and "435 W. 119th St." on a slip of paper and told her to go to that address the next morning. She paid Dr. Smuk no money and made no appointment to see him either for the first or any subsequent meeting. Complaining witness presented herself at the 119th Street address the following

morning and discussed the abortion with defendant, who fixed the fee and collected the money.

Complaining witness testified that thereafter defendant told her to go to the bathroom, brought her a white surgical gown, took her to a room equipped with operating table, sterilizer, instruments, etc., gave her an injection in the arm, put her on the operating table, adjusted her feet in the stirrups of the operating table and placed a towel over her face. She further testified that while lying on the operating table with her feet in the stirrups she pushed the towel off her face. She observed Dr. Smuk who had on a white surgical gown, a cap, and a mask over his face which covered his mouth and chin. There was no mention of his name by either the doctor or defendant, nor did the complaining witness call him by name. She recognized him by his build and voice. Further testifying, complaining witness stated that defendant handed two instruments to the doctor who inserted both in her vagina. She felt pain, and could hear the scraping of the instruments on each other inside her. Defendant from time to time handed the doctor other instruments, which were inserted in her vagina. She told the complaining witness that "you girls are pigs" and that she had to clean out their dirty mess. During the operation defendant administered another injection in the complaining witness's leg to alleviate the pain.

There is no testimony by the complaining witness or elsewhere in the record that the defendant personally used or employed instruments on her and thereby caused or produced the abortion and miscarriage complained of. In all of the testimony pertaining to the operation, the complaining witness related in detail the performance of "Dr. Smuk" and his use of the instruments. The defendant insists that the trial court erred in refusing to direct a verdict of not guilty as requested at the close of the State's case and at the close of all the evidence because of the failure of the State to prove beyond a reasonable doubt the allegation

that John E. Smuk named in the indictment was the Dr. Smuk testified about. She contends the prosecutor's theory at the trial, as disclosed by an instruction and certain statements in his argument to the jury, was that defendant was an accessory before the fact in aiding and assisting John E. Smuk, the principal; that since there can be no accessory without a guilty principal, it was encumbent upon the State to prove a commission of the crime by the John E. Smuk named in the indictment; and that failure to identify the "Dr. Smuk" referred to in the evidence with the John E. Smuk named in the indictment was therefore a failure to prove her guilt as accessory. There is no merit in the contention. The indictment charged both persons as principals, and the evidence sufficiently showed participation by the defendant in the acts and conduct described. The indictment would obviously have charged her with the crime even if the co-defendant's name had been omitted. It is evident, therefore, that the name was not material. Where an allegation is not essential to the crime charged, and could be stricken from the indictment without leaving it insufficient, a failure to prove the allegation does not prejudice the defendant. (*People* v. *Taranto*, 2 Ill.2d 476.) Nor is a variance with respect to the names alleged in an indictment and proved by the evidence regarded as material unless it is of such a substantial character as to mislead the defendant in preparing his defense or unless it may place him in jeopardy a second time for the same offense. (*People* v. *Braverman*, 340 Ill. 525.) In the present case defendant cannot be subjected to double jeopardy, nor could she have been prejudiced in making her defense, since there is no question about the identity of the woman upon whom the alleged abortion was performed, or about the time, place and manner of committing the crime.

Defendant next contends error was committed in admitting evidence to show she had previously committed an abortion on one Esther Carlin. It is argued that the evi-

dence fails to identify defendant as the perpetrator of the offense. Defendant also argues that to be competent as proof of guilty knowledge, such evidence must show the acts constituted a criminal offense; and that the present evidence failed to show the essential fact of pregnancy. Esther Carlin testified on behalf of the State that in December, 1953, after having previously had intercourse, she did not have her regular normal menstrual period; that she went to a doctor's office, where a urine test was taken; and after talking to a girl friend later, she went to 435 W. 119th Street and rang the Heidman door bell. She was admitted to the apartment by a woman whose name she later learned was Heidman, and declared she was there for an abortion. She was taken into a room where the woman gave her an injection in the arm and asked her if she wanted to go through with the abortion. On receiving an affirmative reply from the witness, the woman took the sum of $200 from her, helped her onto a table and placed her feet into stirrups. A towel was placed over her face. The witness then heard a man's voice, and a treatment was performed upon her similar to that described by the prosecuting witness. When it was finished the woman who had admitted her asked her to get dressed and advised her to take aspirin if she felt any pain. Upon being asked in the courtroom whether defendant was the woman referred to, the witness testified that "She looks like the woman." On cross-examination the witness said "I can't say positive, but she looks like she would be."

It is not disputed that evidence of prior similar offenses is competent to prove the criminal intent of one accused of performing an abortion. (*People v. Gleitsmann,* 384 Ill. 303.) Defendant insists, however, that the evidence in this case is insufficient to prove the material elements of the prior offense. To be competent as proof of guilty knowledge the evidence must show that the alleged similar offense was in fact a criminal one. (*People v. Rongetti,*

338 Ill. 56.) While the testimony as to Esther Carlin's pregnancy may have been inadequate to prove defendant caused her to abort, the evidence was sufficient to show an attempt to commit an abortion on her. (See *People* v. *Peyser*, 380 Ill. 404, 407.) The jury was carefully instructed not to consider it as evidence of defendant's guilt on the present charge of abortion, but only for the purpose of proving the intent which she might have had in dealing with Mary Karageorge. There was no errer in admitting it for such purpose.

Defendant's objection to the sufficiency of the identification must also be rejected. Although Esther Carlin's testimony identifying defendant was not positive, it was not denied by defendant. Its weight was a question for the jury in connection with the other circumstances to which she testified. *People* v. *Maciejewski*, 294 Ill. 390.

Defendant also contends the court erred in overruling in part her motion to suppress evidence obtained by a search of her apartment. At the hearing on the motion it appeared that she occupied the second floor apartment in the building located at 435 West 119th Street. On February 1, 1954, she was arrested on the stairs leading from the first floor vestibule to the second floor, the arrest being made by a police officer who had a warrant for the arrest. She then entered her apartment, followed by three officers and an assistant State's Attorney. A few minutes later another police officer came into the apartment through the front door, and two additional officers entered through the rear door. They removed from her person five ten-dollar bills, and then proceeded to search the apartment. From the drawer of a cabinet they removed certain papers, and in the reception room they found the sum of $300. The police officers and the assistant State's Attorney waited in the apartment for some two hours until a patrol wagon arrived, whereupon an operating table, together with certain instruments, medical supplies and records were removed from

the front room of the apartment and transported to the patrol wagon. The following day the defendant, who remained in custody of the police, was brought back to her apartment. After she unlocked the door, police officers entered and made certain photographs depicting the interior of the apartment.

The court granted defendant's motion as to certain checks, receipts, a diary, and other records, all of which "were not in sight and which required the officers to rummage and seek them by opening drawers and desks, and so forth." The motion was denied, however, as to the money removed from the person of defendant, as well as to objects connected with the crime "which were in plain sight in the reception room and in the office." The court accordingly refused to suppress as evidence the operating table, medical equipment and other articles which were observed on tables and desks.

The mere fact that an accused is lawfully arrested upon warrant cannot ordinarily justify the officers in searching his home or place of business without first obtaining a search warrant therefor. (*People* v. *Kalpak,* 10 Ill.2d 411; *People* v. *Schmoll,* 383 Ill. 280; *People* v. *Martin,* 382 Ill. 192.) The officer has the right, as an incident of the arrest, to search the prisoner; and evidence taken from the person as a result of that search is admissible against him. (*People* v. *Kalpak,* 10 Ill.2d 411.) This right of incidental search may in proper cases extend beyond the person to an area in immediate physical relation to him; (*People* v. *Tillman,* 1 Ill.2d 525;) but its extent is limited by the reasons for its existence: namely, to protect the arresting officer and deprive the prisoner of potential means of escape, and to prevent destruction of evidence by the arrested person. (See *United States* v. *Rabinowitz,* 339 U.S. 56, 72, 94 L. ed. 653, 663-664. Dissenting op.) In determining the reasonableness of a search or seizure the particular facts and circumstances must be considered. In the present case we

think the officers did not act unreasonably in seizing the articles in question. An examination of the record discloses that when the arresting officer started to read the warrant to defendant at her apartment door, which was standing open, she then said "come on inside; the neighbors upstairs will hear you." It thus appears that entry to the apartment was lawful, and it is not disputed that the articles later admitted into evidence were in plain view and were such as would be used in the commission of the crime. As to such articles there was no unlawful search, since the officers were in the apartment at the invitation of defendant. The right of officers to seize visible instruments of crime at the scene of the arrest is not open to question. (See *United States* v. *Rabinowitz,* 339 U.S. 56, 78, 94 L. ed. 653, 667. Dissenting op.) We conclude that the criminal court was correct in refusing to suppress the articles found in plain sight, or the money obtained in a search of defendant's person, performed as an incident of the lawful arrest.

Complaint is made that the court refused an instruction tendered by defendant which required a verdict of not guilty unless the jury found, *inter alia,* that "John E. Smuk" had committed a criminal abortion upon complaining witness. It is evident from what we have said that the court did not err in this respect.

Also objected to is the giving of an instruction on behalf of the State as follows: "The Court instructs the jury that if you find from the evidence in this case beyond a reasonable doubt that Mary Karageorge was pregnant with child and that she aborted or miscarried from an operation on the private parts of her body and that said operation was performed, with intent to cause an abortion, and if you further find that the defendant, Catherine Heidman, stood by, aided, abetted or assisted in the performance of this abortion, and that the said operation was not necessary to preserve the life of Mary Karageorge, then the Court instructs you that, as a matter of law, the de-

fendant is guilty of abortion in manner and form as charged in this indictment." The instruction is criticized on the grounds that it "is not limited to the performance of an operation by John E. Smuk"; that it takes away from the jury the question whether an abortion was in fact performed; and that it omits, after the words "stood by," the conjunctive word "and" as used in the statute (Ill. Rev. Stat. 1953, chap. 38, par. 582,) thus erroneously stating that one who stands by may be guilty as an accessory. Other instructions required proof beyond a reasonable doubt that defendant performed the acts charged, and correctly defined an accessory in the language of the statute. Under the facts as conclusively shown, the defendant was present when the alleged offense was committed and took an active part in furtherance thereof. In the light of such evidence and the remaining instructions there could be no possible inference unfavorable to defendant from the language of the instruction in question. The contentions of defendant fail to show that the giving of such instruction was prejudicial error. *People* v. *Levy,* 351 Ill. 110, 119-120; *People* v. *Zwienczak,* 338 Ill. 237, 242; *Cook* v. *People,* 177 Ill. 146, 155-156.

Defendant urges that she was prejudiced by improper and inflammatory remarks of the prosecutor. In his argument to the jury he said: "How many people do you know who would love to have a child? How many people do you know? And how those lives were scraped out. * * * That was her business. Abortions were her business. * * * Well, ladies and gentlemen of the jury, those two pregnancies of Mary Karageorge and Esther Carlin, those were God's children; they were waiting to be born and take their place in this world."

Defendant also complains of other remarks, to which no objection was made at the trial, in which the prosecutor told the jury "It wasn't easy for us to have to ask you to listen to that type of filth and rot that you did here. But

because of certain members of our community who prey on that filth and rot, it was necessary. I say, in closing, that this is your community. If you want to keep the back alleys of filth and rot, go ahead. Come here and pass on it and say it is all right. * * * If in order for us to be sincere and vigorous in a prosecution we have to wait until somebody is slugged or murdered, then we might as well wipe all the rest of the laws from our books."

It is impossible to lay down a precise rule in regard to what may or may not be said in an argument to the jury. After examining the remarks complained of in their context, and in the light of the nature and circumstances of this case, we do not consider them to be sufficiently improper and prejudicial to justify a reversal. It is improper, of course, to make statements the only effect of which is to inflame the passion or arouse the prejudices of the jury, without throwing any light upon the issues. (*People* v. *Galloway*, 7 Ill.2d 527.) But a prosecuting attorney has the right to draw all the legitmate inferences he can from the facts proved, and the accused cannot complain that such deductions place him in a bad light before the jury. Thus the prosecutor may comment upon the conduct of the accused, and denounce his wickedness, if such comment and denunciation are based upon evidence competent and pertinent to the issues. (*People* v. *Heywood*, 321 Ill. 380.) He also has the right to dwell upon the evil results of crime and to urge a fearless administration of the criminal law. (*People* v. *Beil*, 322 Ill. 434; *People* v. *Wood*, 318 Ill. 388.) While the present argument to the jury could have been made with more restraint the remarks in question have a basis in the evidence and were within the scope of permissible comment.

The evidence in the case at bar clearly sustains the jury's verdict, and no prejudicial error has been shown in the trial. The judgment will therefore be affirmed.

*Judgment affirmed.*