THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ENRIQUE PARDO *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 79-23

Opinion filed April 22, 1980.—Rehearing denied May 19, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellants.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Mary A. Jischke, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Enrique Pardo, Raphael Sanchez, and Pablo De Jesus were charged with murder of Candida Rivera and with attempt murder, aggravated battery and armed robbery of Juan Blanch. The trial court granted the motion of Pardo and Sanchez to be severed from De Jesus and to proceed to separate trial. Following a jury trial, Pardo and Sanchez, defendants, were found guilty of murder, attempt murder, and armed robbery for which they were sentenced to concurrent terms of 75 to 150 years (murder), 35 to 75 years (attempt murder), and 4 to 10 years (armed robbery).

On appeal defendants contend that the State's failure to timely provide them with favorable evidence and refusal to correct misstatements in prosecution witness testimony denied them a fair trial. They further claim that this favorable evidence, if properly presented by the State, would have demonstrated the lack of credibility of the prosecution's only occurrence witness. Accordingly, they now assert that they were not proved guilty beyond a reasonable doubt. Defendants also aver that physical evidence, two bullet casings, unconnected with the crime, was improperly admitted. Defendant's final allegations of error pertain to the attempt murder instructions and to the trial judge's admonishments of the minimum sentence for attempt murder under the changed sentencing provisions.

On February 7, 1977, at approximately 2 p.m., two shots were fired at Juan Blanch while he was in the bathroom of his second floor apartment. He recognized the man at the door holding the gun as Raphael Sanchez, and the two others behind Sanchez as Enrique Pardo and Pablo De Jesus. Blanch had known Pardo and Sanchez for a number of years and De Jesus for several months. Pardo, also holding a gun, told Blanch to go into the dining room where Blanch was ordered to sit at the table next to his common law wife, Candida Rivera. Pardo continued to hold the gun on

them while Sanchez took Blanch's car keys, wallet, and approximately $300. Blanch then heard Sanchez and De Jesus searching through drawers in the kitchen and bedroom, after which Sanchez returned to the living room, held a gun to Blanch's head, and pulled the trigger. Falling to the floor, lapsing in and out of consciousness, Blanch heard Pardo say, "Shoot her if you are going to shoot her." At some point later, Blanch regained consciousness and struggled into the front room. There he saw Rivera with a gunshot wound to the head. He tried to use the telephone, but was unable, so he went to the stairs and, upon reaching the first floor, opened the front door. He heard a woman scream before he collapsed.

After Blanch testified to the above events, he added that although he did not know who shot Rivera, he was certain that Sanchez had shot him.

Prior to trial, defendants filed a motion to dismiss the indictment premised on the State's failure to furnish evidence favorable to the accuseds in compliance with defense discovery motion. Attached to that motion was a "rap sheet" captioned with the name Juan Real which listed a conviction under the name Juan Blanch. The State contacted Blanch and ascertained that he had been convicted of the possession and sale of narcotics and of breaking and entering. The motion to dismiss was withdrawn after the State amended its discovery answer. Defense counsel stated that he did not have a certified copy of the conviction and asked for a stipulation of the Juan Blanch/Juan Real conviction. The State refused to stipulate to a conviction without a certified copy but instead agreed to stipulate that the "rap sheet" was that of the victim. The trial judge ruled that the defendants could use the "rap sheet" to impeach Blanch.

During his direct examination, Blanch admitted that he had been convicted of the sale and possession of heroin when he was 17 years old, but denied that he was ever a heroin addict. On cross-examination, Blanch denied that he had ever been known as Juan Real or Juan Black, and defense counsel went no further with the attempted impeachment.

Officers Garcia, Rothmun and Thomas and Investigators Ducar and Griffin testified to the discovery of the victims and the investigation leading to defendants' arrest. Rothmun entered the apartment with Garcia through the partially open back door. A small child walked toward them, dragging a bloody blanket. Rothmun picked up the child and walked through the apartment, observing blood on the floor and chair in the dining room. When the child slipped from his arms and ran into the living room, Rothmun saw the body of Rivera, the child's mother, lying there. Garcia heard noises from the stairway and discovered Blanch at the foot of the steps lying face down, bleeding and vomiting. Garcia asked him over and over in Spanish what had happened as Blanch lapsed in and out of consciousness. Blanch finally responded that Pardo had shot him and his wife, and he gave a brief description of the perpetrator.

The next morning Garcia went to the intensive care section and spoke, with some difficulty, to Blanch. Investigators Griffin and Ducar were in Blanch's room at the time and defendant Sanchez's name was mentioned to Garcia, apparently by one of the other policemen. Ducar testified that after the conversation, he also focused his investigation on Sanchez and Pardo. At the hospital the next day, Ducar spoke to Blanch's brother-in-law, who provided the name "Pablo." When Ducar saw Blanch, he asked about "Pablo" and then added the new name to his investigation. Two months later Ducar executed an outstanding murder warrant on Sanchez in Miami. During redirect, in clarification of defense counsel's cross-examination concerning a third suspect, "Pablo," Ducar stated that Blanch placed Pablo in the apartment at the time of the shooting. Further, Ducar related that, according to Blanch, Pablo pointed the gun at Blanch's head, fired the gun, but did not strike him with the bullet.

Inspector Griffin testified that a search of the apartment yielded no contraband, weapons, or fingerprints. On cross-examination, defense counsel brought out Griffin's knowledge of another eyewitness to the crime. On redirect the State was permitted to ask the name of the eyewitness—Pablo De Jesus. Griffin testified that De Jesus had made a statement to the Miami authorities which resulted in an arrest warrant being issued against him for the murder of Candida Rivera.

Officer Thomas testified that two empty .38-caliber bullet casings were found on the dresser in the bedroom. Blanch stated that he had not seen them prior to the incident.

Dr. Kanzler was called to establish Blanch's condition in the emergency room. He stated that Blanch was conscious and able to respond to his requests for certain movements. Blanch had been shot behind his right ear and had bone and bullet fragments inside his skull.

The defense presented alibi testimony for Pardo from three of his relatives—his mother, father, and brother. All stated that Pardo arrived at their home with his wife, Ives Ortiz, between 1 and 1:30 p.m. on the day in question. Pardo went to the park with his brother soon after and returned at approximately 3. He returned to the Federal penitentiary at around 8. In rebuttal, the State called Investigator Griffin, who with his partner had interviewed Pardo the day after the Blanch shooting. Pardo told them at that time that he had gone to his in-laws' home at about 3:30 and had been home with his wife prior to that time.

During the defense case a court reporter was called to verify that Blanch testified at a preliminary hearing that he lay on the floor for a half hour or hour after being shot. Officer Kenneth Kain testified that he had seen a Spanish man with Ives Ortiz at 1 p.m. on February 7. On questioning by defense counsel, however, Kain could not identify the

man as Pardo. Investigator Griffin was called to testify that Kain had previously told him that the Spanish man was Pardo. The defense also called a neighbor who stated she had heard a window break between 12 and 1 p.m. on the pertinent date.

The jury found defendants guilty of all charges after which the judge gave a continuance so the defendants' attorney could explain the sentencing acts. At the next court date, defense counsel represented that he had explained the old and new acts and that defendants elected the old. The judge restated the possible sentences and asked for mitigation and aggravation. Following their sentencing, defendants took this appeal.

Defendants initially contend the State's untimely and incomplete disclosure of the criminal background of Juan Blanch denied them their due process and confrontation rights. The State asserts that the defendants had sufficient time to acquire the certified copy of the conviction once they became aware of Blanch's record and, secondly, were not prejudiced in any event since they were not foreclosed from impeachment with the contents of the "rap sheet."

During trial, defense counsel asked the trial judge to submit the "rap sheet" to the jury, but the court denied the request stating "the Court doesn't believe that you used it properly [for impeachment]." Defense counsel then asked that the court read a statement to the jury to the effect that Real was the name Blanch had been convicted under in his admitted earlier crime of possession and sale of narcotics. The judge responded:

> "You were permitted to use it for impeachment. I didn't say it would be accepted into evidence. You have not proven that Juan Blanch and Juan Real are the same person. There was no impeachment as far as the conviction is concerned because the man admitted on the stand that he was convicted. There is no showing that he knew that he was known as Juan Real in any way whatsoever. What the Chicago Police Department lists him as does not necessarily impeach him. Therefore, it is denied."

▪▌ Defendants failed to include an objection to the State's "untimely" disclosure in their written motion for a new trial and hence may be considered to have waived such an argument. (See *People v. Pickett* (1973), 54 Ill. 2d 280, 284, 296 N.E.2d 856.) Furthermore, at trial, defense counsel withdrew his motion to dismiss which was predicated on the State's failure to comply with discovery. This action, when coupled with defense counsel's affirmative statements that the prosecution had sufficiently complied with defendants' discovery motion, strengthen the waiver argument. Similarly, we can find no mention of a defense request for a continuance to provide additional time to prepare for trial or to gather additional evidence once Blanch's record was revealed. (See *People v. Raby* (1968), 40 Ill. 2d 392, 401, 240 N.E.2d 595, *cert. denied*

(1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867.) Thus, as shown by defense counsel's statements and actions, the overall purpose of the discovery rules, to prevent surprise or unfair advantage, was not thwarted. *E.g., People v. Quevreaux* (1950), 407 Ill. 176, 184, 92 N.E.2d 62, *cert. denied* (1951), 340 U.S. 938, 95 L. Ed. 677, 71 S. Ct. 485.

■ Defense counsel cross-examined Blanch and was allowed by the trial court to use the rap sheet for impeachment. It is apparent from the record, however, that defense counsel failed to establish a foundation for impeachment by the rap sheet. Similarly, the questions asked were so general and vague as to belie their use for impeachment. ("[W]ere you ever known by the name Juan Real?") No questions were asked to provide the circumstances, time, place or people involved when the prior impeaching act or statement was made; these are basic foundation requirements. (*E.g., People v. Perri* (1942), 381 Ill. 244, 249-50, 44 N.E.2d 857.) Since the impeachment was not perfected or even fully attempted (defense counsel voluntarily withdrew from that line of questioning), the trial court could not be expected to supply "impeachment" by the inappropriate submission of the rap sheet, obviously hearsay, to the jury. See *Perri.*

■ Defendants argue that the prosecution had a duty to correct Blanch's testimony and, indeed, to supplement it as to all convictions and aliases. Yet the record discloses that the questions defense counsel asked Blanch were so vague and subject to misinterpretation, especially when conveyed through an interpreter, that the responses did not demonstrate clearly and convincingly that they were wilfully and purposely false so as to constitute perjury. (Accord *People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685 (in the context of a post-conviction petition).) Further, at trial, no effort was made by defense counsel to clarify his query, to pursue his line of questioning, or to introduce evidence proving that Real and Blanch were the same man. Thus the trial court presented defendants with the opportunity to cross-examine Blanch using the contents of the rap sheet both as to any aliases and presumably as to any felony convictions; that they did not properly avail themselves of this opportunity cannot now be held to constitute error on the part of the trial judge or subversion of duty by the State. Compare *People v. Martin* (1974), 56 Ill. 2d 322, 307 N.E.2d 388.

Defendants' second contention is that they were not proved guilty beyond a reasonable doubt. They point to alleged inconsistencies in the record to substantiate that conclusion. Nevertheless, it is well established that a reviewing court does not sit to reweigh all the evidence and substitute its judgment as to the credibility of the witnesses for that of the trier of fact (*e.g., People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513),

especially where, as here, there was more than enough evidence to support the decision that was made. (See *People v. Mills* (1968), 40 Ill. 2d 4, 19, 237 N.E.2d 697.) Juan Blanch gave uncontradicted and unequivocal testimony concerning the circumstances of the crime and the identity of his attackers. Although alibi testimony was presented on behalf of Pardo, it was impeached by his own statements to police the day after the crime. The other professed inconsistencies, the broken window at noon, the length of time Blanch lay on the floor, were so insubstantial as to hardly raise themselves to the level of reasonable doubt, particularly in light of Blanch's identification testimony and the lack of any showing of motive to fabricate on his part.

■■■ Defendants next contend that two .38-caliber shell casings should not be submitted to the jury. Defendants have waived this argument by failure to include it in their post-trial motion. (Ill. Rev. Stat. 1977, ch. 38, par. 116—1(c); *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Even if it had not been waived, the trial court's admission of the evidence was proper because the physical evidence was adequately connected with the crime and the defendants. Blanch testified that the shell casings were not on the dresser in the bedroom prior to the time the two shots were fired into the bathroom by Sanchez. He also stated that Sanchez searched the bedroom, including the dresser, while Blanch and Rivera were held in the dining room. The shell casings were found by the police during a search following the crime. Thus the foundation evidence presented connected the shells to the exact time and place of the crime. *Cf. People v. Jones* (1961), 22 Ill. 2d 592, 177 N.E.2d 112 (evidence may be admissible and relevant if connected with the defendant and the crime, but possession is one and not the only possible connecting factor); *People v. Fletcher* (1978), 66 Ill. App. 3d 502, 383 N.E.2d 1285 (proof of connection may be circumstantial and does not necessarily have to have been the item actually used in the commission, only that it was suitable for such).

Defendants' fourth major claim relates to the attempt murder instructions given to the jury. The State concedes that the instructions given were improper under *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28, and *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903. As in *Harris*, the instructions in the instant case on attempt murder, when read in conjunction with the murder instructions, allowed the jury to find defendant guilty of attempt murder where the evidence might only indicate that the defendant intended to cause great bodily harm. The jury could therefore find attempt murder without the specific intent to cause death required for the crime of attempt murder. Yet the State contends that reversal is not mandated since defense counsel failed to object on that basis at trial or to raise it in the motion for a new trial, thereby waiving the

issue. Further, the State claims that even if the issue is considered despite the waiver, the error was harmless beyond a reasonable doubt, because defendants' firing of a gun at point blank range into Blanch's head was clear evidence of defendants' intent to cause death. See *People v. Lindsay* (1978), 67 Ill. App. 3d 638, 384 N.E.2d 793; *People v. Bingham* (1979), 75 Ill. App. 3d 418, 423, 394 N.E.2d 430.

■■ As stated earlier, the failure to specify the issue in defendants' motion for a new trial or by objection prior to the jury's hearing the instruction constitutes a waiver and generally cannot be urged as a basis for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856). Nevertheless, Supreme Court Rule 451(c) allows this court to consider the issue on the merits if there is a substantial defect in the instructions and the interests of justice so require. Ill. Rev. Stat. 1977, ch. 110A, par. 451(c); *People v. Harris* (1978), 72 Ill. 2d 16, 377 N.E.2d 28.

Our supreme court recently clarified this waiver rule in *People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331, where they applied the rule strictly and rejected the defendant's claim that an instructional error identicial to that presented in the instant case constituted such a substantial defect as to require the court to consider the merits of the claim in the "interests of justice." With the *Roberts* case our supreme court signaled an intent to apply the waiver rules uniformly and stringently, in accord with the positions of the United States Supreme Court (*Henderson v. Kibbe* (1977), 431 U.S. 145) and the Seventh Circuit Court of Appeals (*United States v. Jackson* (7th Cir. 1978), 569 F.2d 1003, *cert. denied* (1978), 437 U.S. 907, 57 L. Ed. 2d 1137, 98 S. Ct. 3096). The instant case shows repeated waiver of issues for appeal. No issue of incompetence of counsel at the trial level has been raised, and it is doubtful that the trial would rise to the standard for retained counsel of sham or farce in any event, and we decline to decide whether the representation constituted actual incompetence resulting prejudice, the standard applicable to appointed counsel (see *People v. Bland* (1978), 67 Ill. App. 3d 716, 724, 384 N.E.2d 1380); however, there might be a valid argument that defendants here did not receive assistance of counsel which met the minimum standard of professional representation. (See *United States ex rel. Williams v. Twomey* (7th Cir. 1975), 510 F.2d 634, *cert. denied* (1975), 423 U.S. 876, 46 L. Ed. 2d 109, 96 S. Ct. 148) This standard, recently adopted by the Seventh Circuit, might facilitate application of a stringent waiver rule.

■ The defendants' fifth contention, that the trial court erred in not submitting defendant's proposed non-IPI instruction pertaining to Juan Blanch's credibility, was not raised in the post-trial motion and is therefore subject to waiver. Even had it not been waived, the trial court could properly refuse to give a non-IPI credibility instruction where an

IPI instruction was given which adequately addressed the same issue. *People v. Poe* (1971), 48 Ill. 2d 506, 272 N.E.2d 28, *cert. denied* (1971), 404 U.S. 942, 30 L. Ed. 2d 256, 92 S. Ct. 292.

■■ Defendants' final claim, that the case must be remanded for new sentencing because of a misstatement by the trial judge, is also without merit. There appears to be no question but that the trial court improperly advised defendant that under the "old" sentencing code the minimum sentence for attempt murder was four years; in fact there was no minimum sentence. Prior to the sentencing hearing at which the misstatement was made, the sentencing had been continued for two weeks to provide defense counsel with an opportunity to advise defendants of the differences between the old and new acts. At the sentencing hearing, the attorney for defendants informed the court that he had conferred with his clients and they elected the old act. After each of these steps, the trial court reviewed the two acts, and asked for defendants' election. Once again, they chose the old act. Even with the trial court's misstatement, the record reflects that there was adequate advisement by defendants' attorney and sufficient opportunity for defendants to have questioned any aspect of the two acts. (*E.g., People v. Hamilton* (1980), 80 Ill. App. 3d 794, 400 N.E.2d 599 (attorney's advisement sufficient).) Furthermore, any error was clearly harmless since the four-year minimum had no application to this case where an actual sentence of 35-70 years was imposed and where, in a crime of this nature, defendants could not possibly have expected and relied on the misstated minimum sentence. See *People v. Eddington* (1978), 64 Ill. App. 3d 650, 381 N.E.2d 835, *aff'd* (1979), 77 Ill. 2d 41, 394 N.E.2d 1185 (a similar misstatement of the minimum sentence held harmless error where the sentence imposed was a minimum of 20 years and there was no indication that the trial judge had used the reference point of four years).

For the foregoing reasons, the judgments are affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.