THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROGER TOLEFREE, Defendant-Appellant.

First District (2nd Division)   No. 79-309

Opinion filed June 10, 1980.

James J. Doherty, Public Defender, of Chicago (Geraldine V. Biggs and James L. Rhodes, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Myra J. Brown, and Jeremiah W. Lynch, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Following a jury trial, defendant, Roger Tolefree, was found guilty of rape and not guilty of burglary with intent to commit rape, and was

sentenced to the penitentiary for 30 to 100 years, plus a 5-year parole period. During the pendency of this appeal defendant attempted to discharge his court-appointed public defender and to have other counsel appointed. His motion was denied both by this court and the Illinois Supreme Court. Defendant then submitted a pro se brief to supplement the one already presented by his appointed counsel. On appeal, the brief of defendant's counsel raises issues of inflammatory and prejudicial prosecutorial comments and of errors in the sentencing process. In his pro se brief, defendant contends that his trial counsel was incompetent, that verdicts arrived at by the jury were legally inconsistent, that he was deprived of his right to counsel at a critical stage of the proceedings, and that his guilt was not proved beyond a reasonable doubt.

The first witness called at trial was the complainant. She testified that she encountered a man, whom she identified at trial as defendant, in the hallway outside her apartment. She felt somewhat fearful so she went to the apartments of friends on two different floors to see if either was home. When no one answered at their apartments, complainant went to the lobby; after a few minutes, she decided that she was being overly cautious and returned to her apartment. As she reached her apartment door she saw defendant standing in an adjacent hallway leading to a fire escape. She quickly attempted to open her door but defendant pushed the door in. The force of the door knocked complainant to the floor and she began to scream for help. She struggled but defendant grabbed her and forced her into the bathroom, throwing her head against the wall. He then slapped her across the face and held a sharp rattail comb against her throat. Complainant stated that defendant threatened to use the comb as a weapon.

After this threat, complainant stopped struggling. She attempted to talk him out of his plan but that too was unsuccessful. When she refused to enter the bedroom, defendant dragged her in by her arms. During the first assault, the phone rang. Defendant told her to answer the telephone and she did, telling the caller she would return the call later. Defendant then told her that he thought he could trust her to not report him to the police. When he showed her his chess club membership card, she observed his first name. Soon thereafter, he forced her into the bedroom for a second time and once again compelled her to have intercourse.

As soon as he left, complainant called the person who had called while defendant was in her apartment. She told this friend that she had been raped and that she was afraid to leave the apartment. Complainant then called another friend, who, like the complainant, was also a nurse, and lived in the same apartment building. Complainant told her that she had been raped. The nurse accompanied complainant to the hospital where the victim was examined by a doctor. Complainant testified that

she had a scratch across her face, bruises on her arms and knees, and a severe headache.

The nurse who accompanied complainant to the hospital testified, affirming her participation in the above events. She also stated that complainant was very upset and had scratches on her face.

The third witness was the examining physician who saw the victim in the emergency room of the hospital. She noted bruises and lacerations on the victim's nose, cheeks, elbows and knees. Police officers also testified, confirming complainant's report of the incident and establishing defendant's fingerprints as those found in complainant's apartment after the assault. The State rested its case after introducing into evidence photographs taken of complainant immediately after the assault.

Defendant testified in his own behalf. He stated that he was in the apartment building on the day in question looking for a friend with whom he had played chess. While on the 10th floor, he encountered complainant, who invited him into her apartment. Defendant admitted his participation in the sexual act but stated that it was performed with complainant's consent and encouragement. He further testified that he considered himself desirable to women and that he is a "smooth talking guy" and talked her into having sex with him, but he did not find it pleasurable and did not enjoy the relationship. Defendant said the victim attacked him when he was critical of her performance and the size of her vagina, and he scratched her face defending himself. He left soon after, when it became apparent to him that he could not establish a relationship with complainant because she was "too out of it." On cross-examination, defendant denied that he had told an investigator that he had not had sexual contact with complainant. He said that he had told the investigator that he had not raped complainant.

Investigator John Toenings of the Chicago Police Department was called by the State in rebuttal. He testified that defendant had said that he "never raped her, he never had sexual intercourse or ever harmed the lady."

Following the guilty verdict, a hearing in mitigation and aggravation was held. In aggravation the State reiterated the circumstances of the crime and the repeated nature of the assault as well as the prior convictions of defendant for other violent crimes. Defendant, on the other hand, presented evidence about his religious practices and his employment record. He was sentenced to not less than 30 nor more than 100 years in the penitentiary plus a 5-year parole period. This appeal followed.

The first issue raised in the brief by defendant's appellate counsel pertains to comments made by the prosecution during closing arguments. In the rebuttal portion of the closing argument the prosecutor stated:

"Ladies and gentlemen, it is very easy for that man to stand up here and say why but what more could you want out of that witness [complainant]? What did she do first when the man first attacked her? She screamed, you heard the testimony she was in a corner apartment down the hall, no one came, ladies and gentlemen. Why is that so curious?

We all know about the case in New York where a woman was killed while 20 people looked on—

Defense Counsel: Objection.

The Court: Objection sustained. We are not concerned about people in New York.

Prosecutor: There maybe was no one there or no one cared."

The State maintains that these comments were invited by the defense's closing argument which emphasized that no one in the apartment building responded to complainant's calls for help. Further, the State contends that even if the first comment about the case in New York was improper, it was cured by the judge's ruling sustaining defendant's objection. The State also argues that the second more general statement (that perhaps no one cared) was a proper comment on the evidence and inferences to be drawn therefrom.

■■ Reference to well-known cases in closing argument is not necessarily prohibited (see *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 324-25, 379 N.E.2d 847), where, as in the instant case, the comments were not of such a nature as to inflame the jury or to suggest a personal similarity between defendant and another criminal. (See also *People v. Heidman* (1957), 11 Ill. 2d 501, 511, 144 N.E.2d 580, *cert. denied* (1958), 355 U.S. 931, 2 L. Ed. 2d 414, 78 S. Ct. 412; *People v. Veal* (1978), 58 Ill. App. 3d 938, 979-80, 374 N.E.2d 963, *cert. denied* (1979), 441 U.S. 908, 60 L. Ed. 2d 378, 99 S. Ct. 2001.) The prosecutor's first comment, comparing the instant case to a more notorious New York case, even if better left unsaid, was not so prejudicial as to mandate reversal, especially where cured as it was by the trial court's prompt action in sustaining defendants' objection. (See *People v. Lion* (1957), 10 Ill. 2d 208, 216, 139 N.E.2d 757.) The prosecutor's argument following the objection, that no one was there or cared, was a proper comment on the possible inferences to be drawn from the evidence.

The second issue raised is that the trial court did not properly advise defendant of his sentencing alternatives. The trial court explained the basic sentencing provisions under the law in effect at the time of the occurrence as against those in effect at the time of the sentencing, and allowed defendant to elect the law under which he would be sentenced. Defendant contends that the improper trial court reference to "a prior felony" as one of the aggravating factors under the "new" law which

could result in an enhanced sentence caused him to make an uninformed or, perhaps, misinformed election to be sentenced under the "old" act.

Claims similar to the one raised by defendant here have been addressed repeatedly by the Illinois intermediate courts. In each instance, it has been held that there is no requirement that the trial judge give any specific admonishments and that it is the duty of counsel rather than the court to advise defendant of his preferred alternative. See, *e.g., People v. Warfel* (1979), 67 Ill. App. 3d 620, 626-27, 385 N.E.2d 175; *People v. Pardo* (1980), 83 Ill. App. 3d 556, 404 N.E.2d 501.

■ In the instant case the trial judge advised defendant of his right to election, which is all that is strictly required under section 8—2—4(b) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b)). Thus, under the precedent enunciated above, the trial court's advisement was sufficient to comply with the statute, and would not constitute reversible error.

■ In addition to the above claim of error, defendant claims that the sentence actually imposed was excessive. We do not agree. Either under *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, or the more recent *People v. Choate* (1979), 71 Ill. App. 3d 267, 389 N.E.2d 670, we conclude that the trial court did not abuse its discretion and defendant has failed to overcome the presumptive correctness of the sentence. (*People v. Hanei* (1980), 81 Ill. App. 3d 690, 706, 403 N.E.2d 16.) The factors urged by defendant in mitigation—his religious beliefs and practices and his employment record—were already considered by the trial court. We see no cause in the instant case to modify the sentence.

■■ Defendant was allowed to file a pro se brief and raised five issues. He initially contends that the failure of his attorney to move to suppress his out-of-court statement denying all sexual contact with the victim was indicative of counsel's incompetence. We note that this statement was exculpatory in nature and not incriminating, and further that the circumstances of its taking (as related by the police officer) led counsel to exercise his judgment as to whether a motion to quash should have been pursued. Initially counsel did file a motion to suppress evidence and to quash the arrest of defendant, but these were withdrawn. A related issue is that counsel failed to adequately cross-examine the victim. The record belies this assertion, as it reflects an extensive cross-examination. Defendant also complains that counsel did not cross-examine the physician, in that it perhaps could have been developed that the victim was not a virgin. The foregoing issues each present matters involving the exercise of judgment, discretion and trial tactics; none establish actual incompetency of counsel. *People v. Knowles* (1979), 76 Ill. App. 3d 1004, 1010, 395 N.E.2d 706.

■ When the jury returned to deliver its verdicts, the court permitted

another counsel, with defendant's permission, to accept the verdicts and this counsel proceeded to poll the jury. Defendant suggests this deprived him of his constitutional right to counsel at a critical stage of the proceedings and merits a reversal of his conviction. We disagree. Defendant's reliance upon *Johnson v. Zerbst* (1937), 304 U.S. 458, 82 L. Ed. 1461, 58 S. Ct. 1019, in support of his contention is misplaced, since it concerns deprivation of any counsel, not, as here, provision of alternate counsel with defendant's consent.

■■ Defendant also contends that the not guilty of burglary verdict and the guilty of rape verdict were legally inconsistent and thus mandate defendant's acquittal on the rape charge. There is no merit to this claim. Each of the offenses is based upon different elements and it is logically and legally consistent for a trier of fact to have found defendant guilty of one but not the other. See also *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61 (also recognizing the jury's right to mediate verdicts for lenity).

Defendant's final contention is that the evidence failed to establish his guilt beyond a reasonable doubt. On the contrary, we find the evidence overwhelmingly reflected his guilt beyond a reasonable doubt. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.