THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROOSEVELT BARNES, Defendant-Appellant.

First District (4th Division) No. 82—459

Opinion filed September 8, 1983.

Neville, Pappas & Mahoney, Ltd., of Chicago (Ronald Neville, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael Shabat, Michele A. Grimaldi, and Thomas Gearen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial, the defendant, Roosevelt Barnes, was convicted of murder and armed violence and was subsequently sentenced

to 40 years' imprisonment. On appeal, the defendant raises seven issues which involve admission of evidence, suppression of identification testimony, jury instructions, comments made during closing arguments and reasonable doubt.

The first issue is whether the trial court erroneously allowed a statement into evidence which was made in the hospital by the victim prior to his death. The victim was shot on August 14, 1980. He made a statement to an assistant State's Attorney and a policeman in the intensive care unit at the hospital on August 28, 1980. The victim died on August 31. Prior to trial, the defense presented a motion *in limine* requesting that the court preclude the State from introducing evidence at trial concerning the victim's statements. During the hearing on the motion, the defendant argued that the victim's statements were not admissible as either a dying declaration or any other exception to the hearsay rule.

The police officer who was present in the victim's hospital room testified both at the hearing *in limine* and at trial. The assistant State's Attorney who questioned the victim testified only at trial. Their testimony disclosed that when the victim was questioned in the hospital, he was suffering from injuries incurred when he was hit in the chest with a close range blast from a shotgun. His liver had been removed and he had lost 1½ of his lungs. Further, his heart was being monitored, he had a tube down his throat as a result of a tracheotomy and he had three separate intravenous lines attached to his arm. The victim was not under the influence of any medication during the interview. Due to the nature of his injuries, the victim was unable to speak during the interview. However, he was able to respond to questions by nodding his head affirmatively or negatively and by making limited motions with his hands and arms.

The assistant State's Attorney testified that after he introduced himself, he asked the victim if he realized that he was in imminent danger of dying and had little or no chance of recovery. The victim nodded affirmatively. He next nodded affirmatively when he was asked if he knew the defendant. The assistant State's Attorney then asked the victim if he could identify the person who shot him, and the victim nodded affirmatively. When he was asked if the defendant had shot him the victim nodded yes. The assistant State's Attorney then asked the victim how long he had known the defendant. The victim held up three fingers and nodded affirmatively when asked if that meant three years. The victim was then asked whether he or any other person present during the shooting incident had a weapon and the victim shook his head negatively. The assistant State's Attorney asked

the victim if the defendant had said that he was going to kill him. The victim nodded affirmatively. The victim was then asked how close the defendant was to him when the shot was fired. Because the victim could not speak, the assistant State's Attorney asked him whether the distance was five feet. The victim shook his head and motioned with his hand that the distance was further than five feet. When asked if he was shot from a distance of 10 feet, the victim nodded affirmatively. The victim was next asked what caused the dispute. He motioned with his hand toward his head. When asked if this gesture meant that the dispute was over a comb or hair pick, the victim nodded affirmatively. The victim was next asked whether he could identify a photograph of the person who shot him and the victim nodded affirmatively. After the police officer and the assistant State's Attorney placed six photographs on the bed next to the victim, the victim pointed to the defendant's photograph.

■■ ■ On appeal, the defendant argues that the testimony of the police officer and the assistant State's Attorney was insufficient to create the necessary foundation for introducing the victim's statements as dying declarations. Specifically, the defendant contends that there was insufficient evidence to indicate that the victim was aware that he was in imminent danger of dying; that because the victim could not speak, there was no way to judge his state of mind; that the victim did not possess his mental faculties when he was questioned; and that the victim could not reasonably believe that he was in danger of dying because he was not questioned until 14 days after he was shot. The defendant further urges this court to require an additional and unprecedented factor to be present in order for a statement to be recognized as a dying declaration: "That the decedent was of such a moral conviction that he would not have likely lied just prior to death."

In order for a statement to qualify as a dying declaration, the statement must be made under the fixed belief and moral conviction of the person making it that his death is impending and certain to follow almost immediately. (*People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328.) The belief of the dying person that death is impending furnishes the guarantee of truthfulness which makes his declaration admissible in evidence. (*People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280.) The declarant's belief may be determined by anything said by him and also by the facts and circumstances surrounding the making of the statement. (*People v. Davis* (1981), 93 Ill. App. 3d 217, 416 N.E.2d 1197.) The declarant must be in possession of his mental faculties sufficiently to understand what he is doing and to be able to

give a true and correct account of the facts to which the statement relates. (*People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328.) Finally, following a preliminary hearing outside the presence of the jury, the trial court must first be convinced beyond all reasonable doubt that all of the elements of a dying declaration are present before such statements may be heard and considered by the jury. *People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328.

In the instant case, we believe that the victim's statements were properly allowed into evidence by the trial court as dying declarations. First, we believe that there was sufficient evidence that the victim was operating under the fixed belief that his death was impending and certain to follow almost immediately. The victim had been shot in the chest at close range with a shotgun. His liver had been removed and he had lost one and one-half of his lungs. His heart was being monitored, he had a tube down his throat as a result of a tracheotomy, he had three separate intravenous lines attached to his arm and he was in the intensive care room of the hospital. Further, he indicated to both the police officer and the assistant State's Attorney that he realized that he was in imminent danger of dying and had little or no chance of recovery. We believe that all of these circumstances, taken together, demonstrate that the victim was well aware of the fact of his imminent death.

●4 Second, we believe that the victim was in possession of his mental faculties, was able to understand what he was doing and was able to give a true and correct account of the facts to which his statements related. The victim was not on any medication at the time he was questioned. Further, the victim was able to capably answer questions that were posed to him which required more than a simple yes or no answer. For example, the victim motioned with his hands in response to the assistant State's Attorney question concerning the distance from which he was shot. The victim also motioned with his hands toward his head when asked what had caused the dispute. In addition, the assistant State's Attorney and the police officer both testified that the victim appeared to understand the questions asked to him. We believe that these circumstances indicate the victim's ability to have perceived, recollected and communicated the circumstances surrounding the incident about which he was questioned.

The defendant nonetheless argues that the victim could not reasonably believe that he was in danger of dying because he was not questioned until 14 days after he was shot and that because the victim could not speak, there was no way for the trial court to judge his state of mind. The defendant cites no support for either contention

and we fail to find them relevant to the circumstances presented to the court in the instant case. As we have indicated above, the victim was well aware that he was in imminent danger of dying and was possessed of his mental faculties when he was questioned. "The circumstances of each case will show whether the requisite consciousness [of approaching death] existed; and it is poor policy to disturb the [ruling of] the trial judge upon the meaning of these circumstances." (*People v. Smith* (1974), 21 Ill. App. 3d 366, 372, 316 N.E.2d 170, 175.) In the case at bar, we will not disturb the ruling of the trial court where we believe that a sufficient foundation was laid to admit the victim's statements as dying declarations.

■■ As a final matter, the defendant urges that an additional factor must be present in order for a statement to qualify as a dying declaration, namely, "[t]hat the decedent was of such a moral conviction that he would not have likely lied just prior to death." The defendant cites no case law or statutory authority for this novel proposition. The Illinois Supreme Court has clearly set out the elements that comprise a dying declaration (see *People v. Tilley* (1950), 406 Ill. 398, 94 N.E.2d 328), and we see no reason why those factors should be increased upon or modified.

The second issue we shall address is whether the defendant was found guilty of murder and armed violence beyond a reasonable doubt. The evidence established that on August 14, 1980, the defendant was approached on a street corner by the victim and three of the victim's friends. After the victim asked the defendant for a hair pick, the defendant refused to supply him with one and walked away. When the defendant looked back at the group from a half of a block away, the defendant stated that he could see the victim and his friends pointing at him. In a statement read at trial, the defendant said that he never saw any weapons but assumed that the group possessed weapons and that they were planning to harm him at a later time. The defendant further stated that he then borrowed a shotgun from a friend and returned to the street corner within five to seven minutes after the initial altercation. The victim and one of his friends were still present on the street corner. The defendant admitted that he walked up to the victim and shot him with a single shotgun blast from nine feet away. The defendant then fled, dismantled the gun and threw it in Lake Michigan.

■■ ■ On appeal, the defendant maintains that he voluntarily returned to the scene of the initial altercation and shot the victim because he was in fear for his life. Further, the defendant argues that the victim's hearsay statement was the only evidence offered by the

State which contradicted the defendant's evidence of self-defense. We disagree.

We have already established that the victim's statements were properly allowed into evidence as dying declarations. The victim stated that the defendant shot him and that no one else at the scene of the altercation had a weapon. The defendant himself did not testify at trial but a previous statement made by him was read into evidence. The defendant admitted that he walked away from the initial altercation and that he did not see any of the other men carrying weapons. The defendant then obtained a gun, voluntarily returned to the scene and shot the victim in the chest.

A person is justified in using force intended to cause death or great bodily harm only where the actor reasonably believes that such force is necessary to prevent imminent death or great bodily harm. (Ill. Rev. Stat. 1981, ch. 38, par. 7—1.) An argument of self-defense cannot stand where the defendant unreasonably believed that it was necessary to kill the victim in order to prevent his own death or great bodily harm. (*People v. Mosley* (1979), 68 Ill. App. 3d 721, 386 N.E.2d 545.) Whether the facts and circumstances of a particular case would induce a defendant's reasonable apprehension of serious bodily harm is a question of fact for the jury. (*People v. Moore* (1976), 43 Ill. App. 3d 521, 357 N.E.2d 566.) A jury's finding on the issue of self-defense will not be reversed unless it is so unsatisfactory or improbable as to raise a reasonable doubt as to the defendant's guilt. *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 415 N.E.2d 499.

In the instant case, the defense offered no evidence that any person other than the defendant possessed a weapon at the time of either altercation. Furthermore, the defendant voluntarily returned to the scene and shot the victim. A defendant may not complain of self-defense when the perilous situation with which he was confronted arose out of his own aggressive conduct. (*People v. Echoles* (1976), 36 Ill. App. 3d 845, 344 N.E.2d 620.) Under the facts of this case, we cannot say that the jury's finding was so unsatisfactory or improbable as to raise a reasonable doubt of guilt and therefore, we find that the defendant was found guilty of murder and armed violence beyond a reasonable doubt.

The third issue raised by the defendant on appeal is whether the trial court erred in refusing to allow the defendant to introduce evidence of the victim's prior conviction for burglary. The defense sought to introduce evidence of the victim's prior convictions for battery in 1979 and for burglary in 1980. The trial court excluded evidence of the burglary conviction but allowed evidence to be admitted

concerning the prior battery conviction. The defendant now argues that it was reversible error for the trial court to exclude evidence of the burglary conviction.

Even assuming for purposes of argument that exclusion of this evidence was improper, we do not believe that the exclusion was reversible error. First, the trial court allowed evidence of the victim's prior battery conviction in support of the defendant's proposition that the victim, rather than the defendant, was the aggressor. Second, we believe that there was a significant amount of evidence concerning the defendant's guilt in this case. Specifically, the defense offered no evidence that the victim or his friends brandished a weapon at any time and the defendant voluntarily returned to the scene of the initial altercation in order to shoot the victim. Therefore, where one of the victim's prior convictions was allowed into evidence and where there was such substantial evidence concerning the defendant's guilt, we do not believe that it was reversible error for the trial court to exclude evidence concerning the victim's burglary conviction.

The fourth issue raised on appeal is whether the trial court erred when it denied the defendant's motion to suppress identification testimony. When the victim was interviewed in his hospital room by an assistant State's Attorney and a police officer, he was shown six different photographs and he identified the defendant's photograph when asked if he could identify a photograph of his assailant.

The defendant argues that the photographic identification was unnecessarily suggestive and that an actual lineup should have been conducted. Specifically, the defendant maintains that the photograph of the defendant was identified only after the assistant State's Attorney and the police officer improperly suggested by the form of their questions that the defendant had shot the victim. Further, the defendant argues that because it was not impossible to conduct an actual lineup in the intensive care unit of the hospital, an actual rather than photographic lineup should have been conducted.

There is no legal necessity that a defendant must be identified in a lineup. (*People v. Moore* (1974), 17 Ill. App. 3d 507, 308 N.E.2d 210.) The practice of showing photographs of suspects to witnesses has been approved as essential to effective law enforcement. (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *People v. Duarte* (1979), 79 Ill. App. 3d 110, 398 N.E.2d 332.) While the Illinois Supreme Court has expressed its disapproval of the use of photographs when a suspect is in custody and a lineup is feasible (*People v. Holiday* (1970), 47 Ill. 2d 300, 265 N.E.2d 634), the court did not establish a *per se* rule prohibiting the use of photographs under these circumstances.

See *People v. Duarte* (1979), 79 Ill. App. 3d 110, 398 N.E.2d 332.

 In the instant case, although the defendant was in custody, we do not believe that it was feasible to conduct a lineup in the intensive care unit of the hospital where the victim had had his liver removed, had lost 1½ of his lungs, was having his heart monitored, had a tube down his throat as a result of a tracheotomy, and had three separate intravenous lines attached to his arm. We think that in such a situation it was permissible for a photographic identification to be conducted.

 Furthermore, we believe that the circumstances surrounding the identification indicated that the identification itself was reliable. (See *Manson v. Brathwaite* (1977), 432 U.S. 98, 53 L. Ed. 2d 140, 97 S. Ct. 2243.) Under *Manson*, the five factors to be considered in assessing a witness' ability to make an accurate identification are the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation and the amount of time between the crime and the confrontation. In the instant case, the victim had known the defendant for three years prior to the shooting at issue in this case. Further, the victim had two opportunities to view the defendant on the morning of the shooting. The victim also immediately picked the defendant's photograph from the group of six photographs that was presented to him. In addition, only two weeks had elapsed between the crime and the time the victim made his identification of the defendant. We believe that all of these factors taken together demonstrate the reliability of the victim's identification of the defendant. We find no merit in the defendant's argument that the victim identified the defendant's photograph only after improper prompting by the assistant State's Attorney and the police officer. Where the victim could not even talk due to the nature of his injuries, the only manner in which he could be questioned was to ask him direct questions. Therefore, where it was not feasible to hold a lineup in the intensive care unit of the hospital and where the circumstances surrounding the photographic identification demonstrated its reliability, we do not believe that the trial court erred when it denied the defendant's motion to suppress identification testimony.

 The fifth issue on appeal is whether the trial court erred in giving and refusing certain jury instructions and in providing the jury with certain verdict forms. The defendant first argues that the court improperly refused a non-Illinois Pattern Instruction tendered by the defense. This proposed instruction stated: "Evidence that the victim

has been convicted of a crime of violence may be considered by you in determining who was the initial aggressor."

The decision whether to give a tendered non-Pattern Instruction is within the discretion of the trial court. (*People v. Larson* (1980), 82 Ill. App. 3d. 129, 402 N.E.2d 732.) A non-Pattern credibility instruction may be properly refused by the trial court where an IPI instruction is given which adequately addresses the same issue. (*People v. Pardo* (1980), 83 Ill. App. 3d 556, 404 N.E.2d 501.) In the instant case, IPI 3.12 was read to the jury and it states: "Evidence that a witness had been convicted of an offense may be considered by you only as it may affect the believability of the witness." We believe that the substance of the defendant's tendered instruction was sufficiently covered by IPI Criminal No. 3.12, the instruction that was read to the jury. Further, where the decision to give a tendered non-IPI instruction is within the trial court's discretion, we cannot say that the trial judge abused his discretion in this case.

 The defendant next argues that the trial court improperly allowed an instruction tendered by the State over defense counsel's objection. The instruction was IPI Criminal No. 3.11, which instructs a jury that they may consider a witness' prior inconsistent statement or conduct in judging that witness' credibility. In the instant case, none of the witnesses were impeached with prior testimony or prior acts. The State admits that the instruction should not have been given but claims that its inclusion was harmless error. We agree.

While the defendant gave conflicting accounts of his involvement in the crime prior to trial, he never testified at trial so the instruction could not have been considered in respect to him. Furthermore, a trial court's error in giving or refusing an instruction will not warrant reversal where the evidence of the defendant's guilt is so clear and convincing that the jury could not reasonably have acquitted him. (*People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343.) In the case at bar, the victim identified the defendant as his assailant, the defendant was identified in a photographic lineup and the defendant admitted that he shot the victim. We believe that this was clear and convincing evidence of the defendant's guilt. Therefore, where we find that the defendant was not prejudiced by the instruction and where we believe that the evidence of the defendant's guilt was clear and convincing, we do not believe that it was reversible error for the trial court to have read IPI Criminal No. 3.11 to the jury.

The defendant also argues that the trial court erred in refusing the defendant's request for additional verdict forms. The jury was given five verdict forms: guilty of murder, guilty of voluntary man-

slaughter, guilty of armed violence, not guilty of armed violence and not guilty. The defendant argues that he was prejudiced because the jury "had to believe that they could not find the defendant guilty of only armed violence, but *had* to find defendant guilty of another charge as well." We disagree.

The jury in this case was instructed that they could only convict the defendant of armed violence if they first found him guilty of murder. In light of this instruction, we do not believe that the defendant was prejudiced when the court refused his request for additional verdict forms. In addition, the trial court need not grant a defendant's request for separate not guilty forms for each offense charged. (*People v. Stokes* (1981), 95 Ill. App. 3d 6, 419 N.E.2d 1181.) Thus, we do not see how the defendant was prejudiced and we find no instance of reversible error.

The sixth issue raised by the defendant is whether he was prejudiced by comments made by the prosecutor during closing arguments. Specifically, the defendant argues that the prosecutor made an impermissible reference to the defendant's failure to testify; that the prosecutor improperly commented upon the defendant's failure to call any witness on his behalf; that the prosecutor improperly commented upon the defendant's exercise of his *Miranda* rights; and that the prosecutor made certain statements that were designed solely to inflame the passions and prejudices of the jury.

We shall first determine whether the prosecution made an impermissible reference to the defendant's failure to testify. During the defense closing argument, counsel stated that the defendant did not testify because the assistant State's Attorney would browbeat, scare and confuse him. During the State's closing argument, the prosecutor stated that the reason that the defendant did not take the stand was because he did not want to explain his self-defense argument. A defendant may not complain of statements made in rebuttal closing argument by the prosecutor which were invited by remarks made by defense counsel. (*People v. Wilson* (1980), 87 Ill. App. 3d 693, 409 N.E.2d 344.) In the instant case, we believe that the prosecutor's statements were invited by defense counsel's statements regarding the defendant's failure to testify. Furthermore, even if a prosecutor's comments may exceed the bounds of proper comment, the verdict will not be disturbed unless it can be said that the remarks resulted in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) While the defense argues that the defendant was severely prejudiced because the prosecutor inferred that the defendant was required to take the stand in order to maintain a the-

ory of self-defense, we do not believe that this argument possesses merit in the context of the entire record of the closing arguments. The entire arguments of both the prosecutor and the defense must be considered and the comments complained of must be placed in their proper context. (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.) Where the comments complained of by the defendant are placed in their proper context, we believe that the statements uttered by the prosecutor were invited by statements of defense counsel, and we do not see where the defendant suffered any real prejudice.

■ The defendant next argues that the prosecutor improperly commented upon the defendant's failure to call any witnesses on his behalf. During defense closing arguments, counsel argued that the State's failure to call as witnesses certain individuals on the State's discovery list of potential witnesses implied the defendant's innocence and that the State should have proven why the defendant was initially a suspect in the case. During the State's closing argument, the prosecutor explained the discovery process and stated that defense counsel had the same subpoena power to bring witnesses into the courtroom as that possessed by the State. Again, we believe that the prosecutor's statements were invited by those statements made by defense counsel in his closing argument. In addition, when the prosecutor's statements are considered in light of the context of the entire closing argument, we do not believe that they resulted in substantial prejudice to the accused.

■ The defendant also argues that the prosecutor improperly commented upon the defendant's exercise of his *Miranda* rights. However, defense counsel did not object to the complained of statement when it was made during closing arguments and did not raise this issue in his motion for a new trial. Consequently, we believe that this issue has been waived for purposes of appeal. The waiver rule applies to constitutional questions as well as to other issues. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Allegedly prejudicial argument is waived in the absence of objection unless the remarks were so prejudicial that the defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process. (*People v. Wilson* (1980), 87 Ill. App. 3d.693, 409 N.E.2d 344.) We do not believe that the comment complained of in the instant case met the above standard and therefore, we do not believe that the prosecutor's comment constituted reversible error.

■ The defendant also argues that certain comments made by the prosecutor were designed solely to inflame the passions and preju-

dices of the jury. Specifically, the prosecutor stated that the defendant considered the case to be a "big joke" and that "he wouldn't be smiling" at the police or the prosecutor if the jury found him not guilty or found him guilty of voluntary manslaughter. The test for determining whether remarks of the prosecutor in closing arguments constitute reversible error is whether those comments were such that, without their having been made, the jury might have reached a different result. (*People v. Panczko* (1980), 86 Ill. App. 3d 409, 407 N.E.2d 988.) The substance and style of closing arguments are within the discretion of the trial court and its finding will not be disturbed absent extreme error. (*People v. Maldonado* (1981), 101 Ill. App. 3d 948, 428 N.E.2d 1087.) In the instant case, we do not believe that the jury would have reached a different result if the complained of comments had not been uttered by the prosecutor. As we have related above, there was extensive evidence concerning the defendant's guilt. Therefore, we do not believe that the trial court abused its discretion when it allowed the prosecutor to make the complained of statement.

As a final matter on this issue, we also observe that the jury was instructed that evidence consists only of the testimony of the witnesses and that neither opening statements nor closing arguments are evidence. Further, the prosecutor twice stated during closing arguments that statements made by the attorneys could not be considered as evidence. Therefore, we do not believe that the defendant was significantly prejudiced as he so contends.

■■ The last issue raised on appeal is whether the trial court erred in refusing to bar the State from introducing the defendant's prior conviction for armed robbery. In a pretrial motion *in limine*, the defendant sought to preclude the State from introducing evidence of his past convictions for purposes of impeachment. The court stated that it would permit introduction of a 1979 armed robbery conviction but that it would exclude evidence of certain earlier convictions. The defendant now argues that the trial court's ruling effectively forced the defendant not to testify at trial. In other words, the defendant contends that he was precluded from testifying because it would have opened him up to impeachment.

The admissibility of prior convictions, such as the one which could have been introduced here, is within the sound discretion of the trial court. (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695.) Felonies such as the defendant's armed robbery conviction are presumed to be probative of a person's credibility. (See *People v. Spates* (1979), 77 Ill. 2d 193, 395 N.E.2d 563.) Further, a defendant's constitutional right to testify in his own behalf is not prejudiced simply be-

cause the State may impeach him with evidence of prior convictions if he takes the stand. (*People v. Austin* (1976), 37 Ill. App. 3d 569, 346 N.E.2d 166.) Therefore, we do not believe that the trial court abused its discretion in this case where the defendant's prior conviction could have been properly admitted as impeachment evidence and where the defendant cannot complain that he was precluded from testifying because it would have opened him up to impeachment.

For the foregoing reasons, the decision of the trial court is affirmed.

JOHNSON and LINN, JJ., concur.