2022 IL App (1st) 200737-U

No. 1-20-0737

Order filed June 13, 2022

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 14623 |
| | ) | |
| CHARLES JOHNSON, | ) | Honorable |
| | ) | Thomas J. Byrne, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Hyman and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Defendant's claim that the trial court erred in allowing the State to impeach him with his prior convictions if he testified at trial was not reviewable because he did not testify and no violation of defendant's constitutional right to testify occurred.

¶ 2  Following a jury trial, defendant Charles Johnson was found guilty of aggravated battery to a government employee (720 ILCS 5/12-3.05(d)(6) (West 2018)) and aggravated battery on public property (720 ILCS 5/12-3.05(c) (West 2018)). The court merged the counts and sentenced him to seven years' imprisonment for aggravated battery to a government employee. On appeal,

defendant challenges the trial court's pretrial ruling allowing the State to impeach his credibility with his prior convictions should he choose to testify. He argues his prior convictions were highly prejudicial and had no bearing on his credibility, and the possible admission of the prior convictions "abrogated" his right to testify in his own defense. We affirm.

¶ 3       Defendant was charged by indictment with the two counts of aggravated battery, premised on an incident occurring on May 15, 2018, in a courthouse where he spit on Cook County Assistant State's Attorney (ASA) Brad Dickey.

¶ 4       Prior to trial, the State filed a motion *in limine* to admit defendant's prior convictions for robbery (case number 10 CR 2707) and murder and armed habitual criminal (case number 15 CR 3342), to impeach his credibility should he choose to testify at trial.

¶ 5       Defendant filed his own motion *in limine* to bar use of his prior convictions. He argued the jury may afford too much weight to his murder conviction when determining his credibility, as that offense was "rather severe." He also argued that denying his request would abridge his consideration of whether he should testify on his own behalf.

¶ 6       Following a hearing on the motions, the trial court ruled the prior convictions were relevant and admissible for purposes of determining defendant's credibility, and the convictions were not unduly prejudicial to him. The court also stated that should the convictions be admitted at trial, it would instruct the jury that the prior convictions could be considered only in assessing defendant's credibility.

¶ 7       At trial, court reporter Sandra Battaglia testified that on May 15, 2018, she was taking a transcript of a hearing in a courtroom involving defendant. The three ASAs present were Dickey,

Anna Sedelmaier, and Craig Engenbretson. At the end of the hearing, defendant yelled, walked past the prosecution's table, made a noise like he was going to spit, and spit on ASA Dickey.

¶ 8      On cross-examination, Battaglia agreed that defendant seemed upset about the outcome of the judge's ruling, but she did not think his anger was directed at anyone in particular. Dickey sat in the middle of the prosecution's table, and defendant's spit landed on his head.

¶ 9      ASA Sedelmaier testified that Dickey sat in the middle chair at the prosecution's table. Throughout the hearing, defendant was "extremely angry," used a lot of profanity, yelled, and called the judge names. The judge called for a recess. But before the court recessed, Sedelmaier heard defendant make noises as if he was clearing his throat and preparing to spit. As defendant was being escorted out of the courtroom, he turned his face towards Dickey where he was sitting and spit a "perfect parable [*sic*] of saliva directly onto [Dickey's] head."

¶ 10     On cross-examination, Sedelmaier stated that Dickey spent most of his time at the prosecution table while Engenbretson argued the motion that was the subject of the hearing.

¶ 11     On redirect, Sedelmaier clarified that Dickey had been involved with defendant "in some regard for quite some time," and the incident occurred on one of the final hearings of "a series of hearings and *** litigation that had gone on for quite some time."

¶ 12     Dickey testified consistently with the other witnesses, reiterating that defendant was yelling, swearing, and insulting his partner, the judge, and "pretty much everybody in court." Dickey elaborated that defendant was about 1½ feet from him when defendant projected a "large amount" of saliva onto the top of his head. The saliva dripped down the front of Dickey's face. Dickey felt "[e]mbarrassed" and "angry." He went to a medical center afterwards for an examination because he was concerned about "communicable diseases" defendant could have had.

¶ 13    On cross-examination, Dickey clarified that defendant was directing insults at various other people but not to him.

¶ 14    After the State rested, the trial court asked defendant if he wished to testify. Defendant responded that he did not want to testify because if he did, the State would raise his murder conviction, and "it wouldn't look good in front of the jury to know that I'm actually convicted of a murder." He confirmed with the court that he understood it was his decision alone whether to testify or not, the decision did not belong to his attorney, and no one promised him anything or threatened him in order for him not to testify. The court found that defendant knowingly and voluntarily gave up his right to testify.

¶ 15    The jury found defendant guilty of both aggravated battery to a public employee and aggravated battery on public property. Defendant filed a motion for new trial, alleging the State failed to prove him guilty beyond a reasonable doubt and made improper statements in closing argument. The trial court denied his motion, merged the two counts, and sentenced defendant to seven years' imprisonment for aggravated battery to a public employee, to run consecutive to the sentence he was already serving in 15 CR 3342. Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 16    On appeal, defendant argues the trial court erred in ruling that his prior convictions of murder and armed habitual criminal were admissible for impeachment purposes if he chose to testify because the convictions were not relevant to his credibility. He also claims the trial court's ruling abrogated his constitutional right to testify in his own defense.

¶ 17    Evidence that a criminal defendant has been convicted of a crime is admissible for the purpose of attacking the credibility of that defendant, where the crime either (1) "was punishable

by death or imprisonment in excess of one year under the law under which the witness was convicted"; or (2) "involved dishonesty or false statement regardless of the punishment." Ill. R. Evid. 609(a) (eff. Jan. 6, 2015) (codifying the ruling in *People v. Montgomery*, 47 Ill. 2d 510 (1971), which adopted the 1971 proposed draft of Federal Rule of Evidence 609). In either case, the evidence is inadmissible if the court determines "that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice." *Id.*

¶ 18 Evidentiary motions, such as the motion *in limine* in this case, "are directed to the trial court's discretion," and we will not disturb the evidentiary ruling absent an abuse of discretion. (Internal quotation marks omitted.) *People v. Patrick*, 233 Ill. 2d 62, 68 (2009). We will find an abuse of discretion "only where the court's ruling is arbitrary, fanciful, unreasonable, or no reasonable person would take the view adopted by the trial court." *People v. Delvillar*, 235 Ill. 2d 507, 519 (2009).

¶ 19 As an initial matter, defendant concedes that he failed to preserve this issue by not raising it in a posttrial motion. See *People v. Reese*, 2017 IL 120011, ¶ 60 ("To preserve an issue for review, a defendant must object at trial and raise the alleged error in a written posttrial motion."). Nonetheless, he asserts that we may consider the merits of the issue under the first prong of the plain error doctrine because the evidence at trial was closely balanced as to whether he intended to spit on Dickey or anyone in the courtroom.

¶ 20 Under the plain-error doctrine, a reviewing court may address a forfeited claim where a "clear or obvious error occurred," and either (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) the "error is so serious that it affected the fairness of the defendant's trial and

challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted.) *Id.* ¶ 69. "Inherent in plain-error analysis is a determination of whether any error occurred." *People v. Hartfield*, 2022 IL 126729, ¶ 51. Without an error, there can be no plain error. *People v. Hood*, 2016 IL 118581, ¶ 18.

¶ 21     In this case, the plain error doctrine does not apply to defendant's claim because defendant did not testify and, therefore, was never actually impeached with the prior convictions at issue. As our supreme court has noted, a defendant who, as here, did not testify at trial is not entitled to review of the trial court's denial of a motion *in limine* seeking to exclude his prior convictions. *Patrick*, 233 Ill. 2d at 77-78 (citing *Luce v. United States*, 469 U.S. 38, 41-43 (1984)). Absent defendant's testimony and the State's attempt to impeach him through use of his prior convictions, any possible harm flowing from the trial court granting the State leave to impeach defendant with his prior convictions is "wholly speculative." *Id.*; *People v. Steward*, 295 Ill. App. 3d 735, 748-49 (1998). As a result, defendant's decision not to testify goes "beyond normal forfeiture" and leaves this court with a record insufficient for reviewing defendant's challenge to the trial court's motion *in limine* rulings. *People v. Averett*, 237 Ill. 2d 1, 18 (2010); *Steward*, 295 Ill. App. 3d at 748-49; *People v. Benson*, 266 Ill. App. 3d 994, 1001-02 (1994); *People v. Redman*, 141 Ill. App. 3d 691, 700 (1986); see also *People v. Scott*, 401 Ill. App. 3d 585, 598 (2010) ("the dual objectives of finality of judgments and judicial economy would be seriously frustrated" if a defendant was allowed to substantively pursue claims of error on a matter that did not take place during trial). Defendant's claim is unreviewable because he did not testify at trial, and the plain-error rule for bypassing normal forfeiture principles is inapplicable here. *Averett*, 237 Ill. 2d at 18-19.

¶ 22    Defendant also claims that his constitutional right to testify in his own defense was "abrogated" by the trial court's ruling allowing the State to use his prior conviction to impeach his testimony.

¶ 23    We find no clear or obvious error as Illinois courts have consistently rejected this argument. " '[D]efendants are often faced with difficult decisions when weighing the pros and cons of testifying at trial,' " but having to weigh those various factors does not inevitably deprive a defendant of the constitutional right to testify in his own defense. *Averett*, 237 Ill. 2d at 15 (quoting *People v. Rosenberg*, 213 Ill. 2d 69, 81 (2004)); see *People v. Knapp*, 2020 IL 124992, ¶ 46 (defendant has a constitutional right to testify at trial and the decision whether to testify belongs solely to the defendant). "[A] defendant's constitutional right to testify in his own behalf is not prejudiced simply because the State *may* impeach him with evidence of prior convictions if he takes the stand." (Emphasis added.) *People v. Barnes*, 117 Ill. App. 3d 965, 978-79 (1983). In this case, the possible impeachment with his prior convictions was a factor for defendant to consider in deciding whether to testify, but his right to testify was not violated by the court's rulings on the motions *in limine*. *Id.* Having found no error, there can be no plain error, and defendant's procedural default is not excused. *Hood*, 2016 IL 118581, ¶ 18.

¶ 24    Even assuming *arguendo* we were to find an error, the evidence was not closely balanced. In reaching this conclusion, we note multiple witnesses testified that defendant was angry with the outcome of the case prosecuted by the ASAs, made noises as if he was preparing to spit, and actually did spit on ASA Dickey's head while he sat at the prosecution's table. *People v. Adams*, 2012 IL 111168, ¶ 22 (closely balanced prong requires a court to "make a commonsense

assessment of the evidence [citation] within the context of the circumstances of the individual case").

¶ 25 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26 Affirmed.